UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

Official Time Stamp
U.S. Bankruptcy Court
Northern District of Ohio
September 11, 2008
(10:55am)

| | | |
|---|---|---|
| In re: | ) | Case No. 08-11224 |
| | ) | |
| BETTY SUE SHORT, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge Pat E. Morgenstern-Clarren |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |

The debtor Betty Sue Short seeks confirmation of her chapter 13 plan as originally filed. The chapter 13 trustee objects under 11 U.S.C. § 1325(b). For the reasons stated below, the trustee's objection to confirmation is overruled, and the debtor's plan is confirmed.

**JURISDICTION**

Jurisdiction exists under 28 U.S.C. § 1334 and General Order No. 84 entered by the United States District Court for the Northern District of Ohio. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L).

**ISSUE**

The overarching issue under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) is how to calculate the "projected disposable income" that a below median income chapter 13 debtor must pay to unsecured creditors.

**FACTS**

The debtor is a below median income debtor with no dependents who proposes to pay a 6% dividend to her unsecured creditors by paying $58.89 per month to the trustee. The offer to pay $58.89 is based on the difference between the debtor's income (as shown on schedule I) and

expenses (as shown on schedule J). Schedule J includes a monthly expense of $150.00 for cigarettes.

## CONFIRMATION UNDER 11 U.S.C. § 1325

Under BAPCPA, a proposed chapter 13 plan may not be confirmed over the trustee's objection unless:

> . . . as of the effective date of the plan—
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B). The dispute here is over whether the debtor is devoting all of her projected disposable income to the plan when she is spending $150.00 a month on cigarettes.

## POSITIONS OF THE PARTIES

The trustee objects to confirmation because he contends that the proposed plan does not devote all of the debtor's disposable income to her unsecured creditors. For a below median income debtor, the trustee's position is that the court should review schedule J expenses, according to relevant case law. On review, he argues that the debtor's budgeted expense of $150.00 for cigarettes should be disallowed because cigarettes are not reasonably necessary for the maintenance or support of the debtor. The trustee takes no position on whether disposable income should be calculated according to form 22C, or by the difference between schedules I and J, because the result in either instance is the same: the debtor's plan does not devote all disposable income to unsecured creditors when the cigarette expense is allowed.

2

The debtor argues that schedules I and J should *not* be used to calculate disposable income. Based upon a mechanical application of form 22C, the debtor claims that she has no disposable income and thus no projected disposable income. As a result, the debtor argues that she is not required to pay anything to her unsecured creditors, whose claims are estimated by the debtor to total $14,311.13. Since she is not required to pay anything, but is offering to pay 6%, she contends that her plan should be confirmed.

## DISCUSSION

As discussed more fully below, the court concludes that for a below median income chapter 13 debtor:

1. The expenses that are reasonably necessary for the debtor's maintenance and support under § 1323(b)(2)(A)(i) are determined by starting with schedule J, subtracting any unnecessary expenses, and adding any other appropriate expenses.

2. The pre-BAPCPA case of *In re Navarro*, 83 B.R. 348 (Bankr. E.D. Pa. 1988) is relevant to determine what expenses are reasonably necessary for the below median income debtor's support and maintenance post-BAPCA.

3. Applying the plain meaning rule of statutory construction, "projected disposable income" is based on the debtor's "disposable income" as determined under 11 U.S.C. § 1325(b)(1)(B).

### I. CALCULATION OF DISPOSABLE INCOME

#### A. The Definition of Disposable Income

The starting point is to determine the debtor's disposable income. That term is defined in 11 U.S.C. § 1325(b)(2):

> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to

be expended for such child) less amounts reasonably necessary to be expended--

> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed. . . .

11 U.S.C. § 1325(b)(2)(A)(i). In this case, the debtor does not have any child support payments, foster care payments, disability payments, or domestic support obligations. Nor does she have any charitable contributions or business expenses, both of which are categorized by statute as amounts reasonably necessary for maintenance and support. *See* 11 U.S.C. § 1325(b)(2)(A)(ii) and (B). The debtor's disposable income is, therefore, calculated by subtracting the expenses that are reasonably necessary for her maintenance and support from her current monthly income. *Hildebrand v. Kimbro (In re Kimbro),* 389 B.R. 518, 521 (B.A.P. 6th Cir. 2008); *In re Castle*, 362 B.R. 846, 849 (Bankr. N.D. Ohio 2006).

### B. Current Monthly Income and Form 22C

Official Form 22C: Chapter 13 Calculation of Current Monthly Income and Calculation of Applicable Commitment Period and Disposable Income ("form 22C") has several purposes: (1) it determines a debtor's current monthly income; (2) it determines whether a debtor is above or below the applicable median family income for the debtor's state of residence, thereby determining whether expenses must be calculated by form 22C; (3) it calculates disposable income for above median income debtors; and (4) it determines the applicable commitment period.

Current monthly income is defined by the bankruptcy code:

> The term "current monthly income"–
>
> (A) means the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period ending on--
>
> > (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii). . . .

11 U.S.C. § 101(10A)(A)(1). Thus, the average monthly income received by the debtor in the six calendar months preceding the petition date is the debtor's current monthly income (CMI). Because form 22C must be completed by all debtors, whether above or below median income, CMI is calculated in the same manner for every debtor who files a chapter 13 petition. *In re Spraggins*, 386 B.R. 221, 225 (Bankr. E.D. Wisc. 2008), *supplemented by In re Spraggins*, No. 07-24728-svk, 2008 WL 2073947 (Bankr. E.D. Wis. May 14, 2008); *see also In re Alexander*, 344 B.R. 742, 746 (Bankr. E.D.N.C. 2006); *In re Girodes*, 350 B.R. 31, 36 (Bankr. M.D.N.C. 2006) ("Section 1325(b)(2) requires the court to look at CMI, not the amounts listed on Schedule I, to calculate disposable income."); *but see In re Dew*, 344 B.R. 655, 660-61 (Bankr. N.D. Ala. 2006) (holding disposable income for below median income debtors is calculated without reference to CMI). The parties here agree that the debtor's CMI is $2,270.12.[1]

### C. Calculation of Expenses for Below Median Income Debtors

The next step is to identify the expenses that are "reasonably necessary . . . for the maintenance or support of the debtor." 11 U.S.C. § 1325(b)(2)(A)(i); *Kibbe v. Sumski (In re*

---

[1] Form 22C, line 11.

5

*Kibbe)*, 361 B.R. 302, 306 n.3 (B.A.P. 1st Cir. 2007). In the case of an *above* median income debtor, the amounts reasonably necessary to be expended "shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)," otherwise known as the means test. However, the bankruptcy code does not define expenses for a below median income debtor, except for the "reasonably necessary to be expended for maintenance or support of the debtor" standard of § 1325(b)(2)(A)(i), which was not changed with the enactment of BAPCPA. *See In re Charles*, 375 B.R. 338, 340 n.2 (E.D. Tex. 2007) (application of means test for expenses not required for below median income debtor); *In re Kolb*, 366 B.R. 802, 811 (Bankr. S. D. Ohio 2007); *In re McGillis*, 370 B.R. 720, 729 (Bankr. W.D. Mich. 2007) ("Indeed, this is the same phrase that was used to describe permissible support and maintenance expenses prior to BAPCPA"). Reasonably necessary expenses for the below median debtor are subject to review by the court. *Girodes*, 350 B.R. at 37.

In analyzing this issue, all courts start with the below median income debtor's schedule J. Some courts move beyond schedule J because that schedule does not take into account all reasonably necessary expenses. It does not, for example, include a debtor's expenses for taxes or secured debt not paid through the plan. *See In re Simpson*, No. 08-21251, 2008 WL 2705606, at *2 (Bankr. E.D. Wisc. July 3, 2008); *In re Rush*, 387 B.R. 26, 32-33 (Bankr. W.D. Mo. 2008) (reasonably necessary expenses include taxes and secured debts not paid through the plan); *In re Spraggins*, 386 B.R. at 226 ("Moreover, simply subtracting the Schedule J expenses from the income found on Form B22C does not end the inquiry, because Schedule J does not contain a deduction for the debtor's payroll taxes."); *In re Braswell*, No. 06-00318-8-JRL, 2006 Bankr., LEXIS 2902 at *5 (Bankr. E.D.N.C. Aug. 23, 2006), (the statute "does not limit reasonably necessary expenses to those listed on Schedule J"); *In re Quarterman*, 342 B.R. 647, 651 (Bankr.

6

M.D. Fla. 2006) ("it is necessary to reduce the Debtor's current monthly income[2] by the amount of income that the Debtor did not receive. Therefore, the amount that the Debtor paid in taxes is subtracted from the Debtor's current monthly income.").

The court finds these cases persuasive, and agrees that schedule J is the starting point for determining the debtor's reasonably necessary expenses, but that other expenses may also be considered. At a minimum, a debtor's payroll taxes[3] and social security taxes are reasonably necessary expenses to be deducted from CMI. In addition, secured, priority, and administrative obligations of a chapter 13 debtor's plan are reasonably necessary expenses because otherwise, a below median income debtor would not be able to propose a realistic and feasible chapter 13 plan.

In sum, subject to the court's review, the expenses of a below median income debtor for purposes of disposable income include schedule J expenses, plus other expenses that are reasonably necessary for the maintenance or support of the debtor.

### D. The Cigarette Expense

The court turns now to the expenses listed on schedule J. Courts have looked at different factors to determine whether the kind and amount of individual expenses are reasonably necessary under § 1325(b)(2). Because BAPCPA specifically defined the "reasonably necessary" standard only for above median income debtors, pre-BAPCPA cases are still instructive as to the

---

[2] The statute does not authorize "reductions" in current monthly income (although some items of income are excluded from CMI), otherwise, the CMI figure as calculated by form 22C would be rendered superfluous. The better view for below median income debtors is to permit such items as reasonably necessary expenses.

[3] However, only the actual amount of taxes owed is reasonably necessary. Therefore, this expense should be scrutinized to ensure the debtor is not claiming the amount of tax *withheld* as reasonably necessary, without regard to *actual* tax liability.

7

limits of that standard for below median income debtors. "A determination of reasonableness of a debtor's expenses requires the Court to make a value judgment." *In re Ashton*, 85 B.R. 766, 770 (Bankr. S.D. Ohio 1988). Generally, "[t]he debtor's expenses should be scrutinized only for luxuries that are not enjoyed by an average American family." *In re Woodman*, 287 B.R. 589, 596 (Bankr. D. Maine 2003), *aff'd* 379 F.3d 1 (1st Cir. 2004).

In a chapter 13 setting, five factors are relevant to determine whether a particular expense is reasonably necessary for the debtor's maintenance or support:

1. Whether the expense is for luxury goods;

2. Whether the expense is excessive in amount;

3. Whether the expense permits the debtor to keep excessive amounts of disposable income;

4. Whether the budget includes expenses only for the purpose of avoiding payments to unsecured creditors; or

5. Whether expenses are deliberately inflated and unreasonable.

*In re Stein,* 91 B.R. 796, 802 (Bankr. S.D. Ohio 1988), *citing In re Navarro*, 83 B.R. 348, 355-56 (Bankr. E.D. Pa. 1988).[4]

---

[4] The court recognizes that several courts have specifically examined cigarette expenses of debtors. Generally speaking, those courts have declined to adopt a *per se* rule that cigarettes constitute an unreasonable expense, choosing instead to examine a debtor's overall financial situation. *See In re Mars*, 340 B.R. 844, 850 (Bankr. W.D. Mich. 2006); *Woodman*, 287 B.R. at 593; *Sarasota, Inc. v. Weaver*, No. 04-1557, 2004 WL 2514290, at *5 (E.D. Pa. Nov. 5, 2004). However, cigarette expenses have been disallowed where courts have found the amount excessive. *See In re Carney*, No. 07-31690, 2007 WL 4287855, at *9 (Bankr. N.D. Ohio Dec. 5, 2007); *In re Lang*, No. 07-31744, 2007 WL 2777770, at *4 (Bankr. N.D. Ohio Sept. 24, 2007); *In re Peluso*, 72 B.R. 732, 738-39 (Bankr. N.D.N.Y. 1987); *In re Hudson*, 64 B.R. 73, 75 (Bankr. N.D. Ohio 1986).

The debtor's schedule J includes $150.00 a month for cigarettes which she contends is about one pack of cigarettes a day. The court does not believe that the cigarettes are properly categorized as a luxury expense, a category that more commonly includes items such as boats, second homes, expensive cars, and the like. As to whether the expense is excessive in amount, the trustee does not contend that one pack a day is excessive; rather, he argues that any expenditure for cigarettes is unnecessary. The court does not have any evidence that one pack of cigarettes a day is an excessive amount for a person who is already a smoker. Further, there is no evidence that the cigarette expense, or any other expense, is deliberately inflated or included in the debtor's budget for the purpose of avoiding payment to creditors. Finally, the court looks to whether including this expense permits the debtor to keep excessive amounts of disposable income. The only expenses in this debtor's budget that exceed $150.00 are housing ($634.00), utilities ($250.00), and food ($310.68). Her transportation costs are $100.00, which is on the low side. The only problematic scheduled expense is $30.00 for auto insurance as the debtor's plan states she will be surrendering her vehicle. The debtor has not allocated any funds at all to recreation. Regardless of the wisdom of the cigarette expense, it appears that the debtor has sacrificed in other areas of her budget to accommodate it. As a result, the court concludes that the cigarette expense is reasonably necessary under § 1325(b)(2)(A)(i).

### E. Calculation of the Debtor's Disposable Income

Based on the above, the debtor's reasonably necessary expenses are calculated as follows:

    Expenses listed on schedule J
    (excluding the auto insurance)         $1,815.68

|  |  |
|---|---|
| Payroll taxes and social security | 367.42[5] |
| Health insurance | 75.83 |
| Long term disability insurance | 11.20 |
| TOTAL | $2,270.13 |

Subtracting this number from the debtor's CMI of $2,270.12 results in disposable income of negative $0.01.

## II. CALCULATION OF PROJECTED DISPOSABLE INCOME

This does not end the inquiry. Although the debtor's form 22C "disposable income" is negative, it is the debtor's "projected disposable income" that she is required to pay to her unsecured creditors, under § 1325(b)(1)(B). To state the issue another way: is the debtor's "disposable income" figure relevant for purposes of her "projected disposable income?"

Courts have adopted three approaches to construing the meaning of projected disposable income. The first is generally termed the presumptive approach, because it "presumes" the figure calculated by form 22C is the debtor's projected disposable income, but allows that figure to be rebutted by schedules I and J. *See e.g., In re Hardacre*, 338 B.R. 718, 722 (Bankr. N.D. Tex. 2006); *In re Jass*, 340 B.R. 411, 418 (Bankr. D. Utah 2006). The second view is called the traditional approach, and it looks only to the debtor's schedule I to determine the income component of projected disposable income. *See e.g., In re Fuller*, 346 B.R. 472, 485 (Bankr. S.D. Ill. 2006); *In re Demonica*, 345 B.R. 895, 900 (Bankr. N.D. Ill. 2006). The third view adheres to the plain

---

[5] This figure is calculated by subtracting from line 4.a. of schedule I the amount of $170.00 listed on line 13 of schedule I, for "adjustment of excess tax withheld." This is consistent with permitting the debtor to deduct from CMI only those expenses which are reasonably necessary for her maintenance or support. Excess tax withheld is, by definition, not necessary.

08-11224-pmc    Doc 23    FILED 09/11/08    ENTERED 09/11/08 11:17:48    Page 10 of 13

meaning of 11 U.S.C. § 1325(b), and requires that projected disposable income must be calculated with specific reference to the term "disposable income" as defined in § 1325(b)(2). The court finds the plain meaning approach is most closely aligned with the statutory language of 11 U.S.C. § 1325(b).

The plain meaning approach recognizes that under BAPCPA, "§ 1325(b)(2)-(3) plainly sets forth a new definition and method for calculating disposable income, and Form B22C is the tool for arriving at that disposable income figure under the new law." *In re Alexander*, 344 B.R. at 746. "What is now considered disposable is based upon historical data–current monthly income derived from the six-month period preceding the bankruptcy filing. 11 U.S.C. § § 101(10A), 1325(b)(2)." *Id*. at 749 (noting pre-BAPCPA, disposable income was calculated by the difference between schedules I and J).

*Alexander* is the seminal case adopting the plain meaning approach to form 22C.[6] That court explained that pre-BAPCPA, the term "projected disposable income" had been calculated by "multiplying a debtor's monthly income at the time of confirmation by 36 months, the normal duration of a Chapter 13 plan, then determining the portion of that income which is 'disposable' according to the statutory definition." *Id*. at 749, *citing In re Solomon*, 67 F.3d 1128 (4th Cir.

---

[6] Courts following *Alexander* and applying the plain meaning approach include *Maney v. Kagenveama (In re Kagenveama)*, ---F.3d ---, ---, No. 06-17083, 2008 WL 2485570 (9th Cir. June 23, 2008); *Coop v. Frederickson (In re Frederickson)*, 375 B.R. 829, 835 (B.A.P. 8th Cir. 2007); *Mancl v. Chatterton (In re Mancl)*, 381 B.R. 537, 541 (W.D. Wisc. 2008); *Rush*, 387 B.R. at 32; *Spraggins*, 386 B.R. at 224; *In re Colclasure,* 383 B.R. 463, 468 (Bankr. E.D. Ark. 2008); *In re Petro*, 381 B.R. 233, 233 (Bankr. M.D. Tenn. 2008); *In re Musselman*, 379 B.R. 583, 588 (Bankr. E.D.N.C. 2007); *McGillis*, 370 B.R. at 725; *Kolb*, 366 B.R. at 814; *In re Brady*, 361 B.R. 765, 773 (Bankr. D.N.J. 2007); *In re Hanks*, 362 B.R. 494, 498 (Bankr. D. Utah 2007); *In re Tranmer*, 355 B.R. 234, 243 (Bankr. D. Mont. 2006); *In re Rotunda*, 349 B.R. 324, 332-33 (Bankr. N.D.N.Y. 2006).

11

1995); *Commercial Credit Corp. v. Killough*, 900 F.2d 61 (5th Cir. 1990). The *Alexander* court concluded that "projected disposable income" now has to be calculated in conjunction with the definition of disposable income, otherwise, disposable income is "just a floating definition with no apparent purpose." *Id*. at 749.

If the § 1325(b)(2) calculation of disposable income is not used to determine *projected* disposable income under § 1325(b)(1)(B), then both the definition of disposable income and CMI would be superfluous. *See Kagenveama*, 2008 WL 2485570, at *5; *Colclasure,* 383 B.R. at 468. Accordingly, when determining the projected disposable income of a below median income debtor, the court is required to use form 22C to ascertain the debtor's current monthly income, from which reasonably necessary expenses must be deducted to arrive at the debtor's disposable income. The disposable income figure is then projected over the applicable commitment period of the debtor's plan, under § 1325(b)(4), to arrive at the debtor's projected disposable income. The amount of "the debtor's projected disposable income to be received in the applicable commitment period" must incorporate the definitions and calculations that Congress took the time to specifically define in the bankruptcy code. Here, the debtor's disposable income is negative. Where a debtor has no disposable income, she can have no projected disposable income with which to fund a plan. *Kagenveama*, 2008 WL 2485570, at *5, *citing Alexander*, 344 B.R. at 750. Because this debtor has no disposable income, she has no projected disposable income that she is required to contribute to repayment of her unsecured creditors. Therefore, the debtor's plan meets the requirements of 11 U.S.C. § 1325(b)(1)(B).

## CONCLUSION

For the reasons stated, the trustee's objection to confirmation of the debtor's plan under 11 U.S.C. § 1325(b) is overruled. The debtor's plan is confirmed as filed. A separate order will be entered based on this decision.

_____
Pat E. Morgenstern-Clarren
United States Bankruptcy Judge